UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SAMUEL WAYNE ROBLING                     CIVIL ACTION

VERSUS                                   NO. 18-6013

NANCY A. BERRYHILL, ACTING               SECTION "E" (2)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Plaintiff, Samuel Wayne Robling, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Act. 42 U.S.C. §§ 423, 1382c. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B). Record Doc. No. 4.

I.   PROCEDURAL HISTORY

Robling filed his application for DIB on July 16, 2015, alleging disability beginning August 17, 2010, due to degenerative disc disease status-post cervical[1] laminectomy,[2] chronic pain syndrome, carpal tunnel syndrome, long term medication use, high blood pressure, and left shoulder problems (Tr. 16, 112, 139, 143). After his claim was denied at the agency level, he requested a hearing before an Administrative

---

[1] Cervical is either 1) pertaining to the neck; or 2) pertaining to the neck or cervix of any organ or structure. Dorland's Illustrated Medical Dictionary 325 (29th ed. 2000) (hereinafter "Dorland's").

[2] Laminectomy is the excision of the posterior arch of a vertebrae. Dorland's Illustrated Medical Dictionary 960 (29th ed. 2000).

Law Judge (ALJ), which was held on March 22, 2017. (Tr. 29-47, 62, 110). On April 3, 2017, Plaintiff amended his alleged onset date to January 28, 2016. (Tr. 125). The ALJ issued a decision denying his application on June 28, 2017. After the Appeals Council denied review on April 20, 2018, the ALJ's decision became the Commissioner's final decision for purposes of this court's review. (Tr. 1-3).

Instead of filing a memorandum of facts and law as ordered, Record Doc. No. 10, plaintiff filed a motion for summary judgment. Record Doc. No. 11. The court treats his summary judgment motion as a memorandum of facts and law regarding his instant appeal from the Commissioner's final decision. Defendant filed a timely reply memorandum of facts and law. Record Doc. No. 17.

II.    <u>STATEMENT OF THE ISSUES ON APPEAL</u>

Plaintiff contends that the Commissioner made the following errors:

A.    The Commissioner did not apply the correct legal standard when assessing plaintiff's residual functional capacity and that finding is not supported by substantial evidence.

B.    The Commissioner failed properly and adequately to consider whether plaintiff's left shoulder degenerative joint disease and chronic pain syndrome were severe impairments.

C.    The Commissioner erred by failing to apply the proper legal standard to determine plaintiff's credibility regarding pain and other symptoms.

Record Doc. No. 11 at p. 5.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1.    Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2016.

2.    Plaintiff did not engage in substantial gainful activity during the period from his amended alleged onset date of January 28, 2016 through his date last insured of December 31, 2016.

3.    Through December 31, 2016, Robling had the following severe impairments: bilateral carpal tunnel syndrome, status-post anterior cervical disc fusion and right shoulder arthroscopy.[3]

4.    Through December 31, 2016, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    Through December 31, 2016, Robling had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he could occasionally engage in postural maneuvers but should avoid climbing ladders/scaffolds. He could occasionally reach overhead, and frequently perform handling/fingering of objects.

6.    Through December 31, 2016, plaintiff was unable to perform any past relevant work.

7.    On December 31, 2016, Robling was 50 years old, which is defined as an individual approaching advanced age.

8.    Plaintiff has a limited education and is able to communicate in English.

---

[3] Arthroscopy is the examination of the interior of a joint with an arthroscope, which is an endoscope for examining the interior of a joint and for carrying out diagnostic and therapeutic procedures within a joint. Dorland's Illustrated Medical Dictionary 153 (29th ed. 2000).

9.    Transferability of job skills is not an issue because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not Robling has transferable job skills.

10.    Through December 31, 2016, considering plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could have performed.

11.    Robling was not under a disability, as defined in the Social Security Act, at any time from January 28, 2016, the amended alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(g)).

(Tr. 18-23).

IV.    <u>ANALYSIS</u>

A.    <u>Standards of Review</u>

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  <u>Richard ex rel. Z.N.F. v. Astrue</u>, 480 F. App'x 773, 776 (5th Cir. 2012) (citing <u>Perez v. Barnhart</u>, 415 F.3d 457, 461 (5th Cir. 2005)); <u>Stringer v. Astrue</u>, 465 F. App'x 361, 363 (5th Cir. 2012) (citing <u>Waters v. Barnhart</u>, 276 F.3d 716, 716 (5th Cir. 2002)).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Richard ex rel. Z.N.F.</u>, 480 F. App'x at 776; <u>Stringer</u>, 465 F. App'x at

363-64; Perez, 415 F.3d at 461.  This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.  Halterman ex rel. Halterman v. Colvin, No. 12-31099, 2013 WL 5913945, at *2 (5th Cir. May 9, 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364. The Commissioner, rather than the courts, must resolve conflicts in the evidence. Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for SSI or DIB,[4] plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2012). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[5] Id. §§ 404.1520, 416.920;

---

[4]The relevant law and regulations governing claims for DIB and SSI are identical. Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994)); Baltierra v. Chater, 70 F.3d 1268, 1995 WL 696740, at *1 (5th Cir. Oct. 19, 1995) (citing Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989)); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *1 (5th Cir. Apr. 5, 2001) (citing Haywood, 888 F.2d at 1467).

[5]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has a severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the

Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Id.

The claimant has the burden of proof under the first four parts of the inquiry. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" Chrisner

---

physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d

123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

      B.    Factual Background

      Plaintiff testified that he is 50 years old and has completed the eighth grade. (Tr.

33). He said that he worked as a painter and a shrimper from 1994 until 2003, and has

done no other work in the last fifteen years. (Tr. 33). Robling testified that he stopped

working as a painter in 2011, and has not worked at all since that time. Id. He said that

he has two children, one eleven years old and one twenty-six years old, and one two-

year-old grandchild, all of whom live at home. (Tr. 33). Plaintiff said that his wife has

a "personal business," which he characterized as a hobby. (Tr. 34). Robling testified that

his daily activities typically consist of cooking dinner during the day and watching

television, though they occasionally include driving his son to school in the morning and

cutting the grass. (Tr. 34-35). He said that he also goes to doctor's appointments, the

grocery store and runs other errands with his son. (Tr. 35).

      Robling testified that he has been involved in worker's compensation litigation that

has been resolved. (Tr. 35-36). He identified his current treating physician as Dr. Patrick

Walker. (Tr. 36).

      Plaintiff testified that he has looked for several jobs, but has had difficulty finding

a job that will accommodate his work restrictions. (Tr. 36). He said that he is not to lift

more than ten pounds, and if he lifts up to thirty pounds, he has pain the next day. (Tr. 36-37). Plaintiff said that he is taking hydrocodone on an as-needed basis, and he experiences dizziness and tiredness when he takes that medicine. (Tr. 37). He testified that he is prescribed four a day, but usually only takes one or two on "bad days," which he identified as one or two days out of every week when he overworks himself. (Tr. 37). Plaintiff explained that he overworks himself when he cuts the grass. (Tr. 37).

Robling identified his medical conditions by stating that when he "started this procedure," his neck and shoulders were bothering him, but now he is experiencing pain in his hip and lower back. (Tr. 37-38). He said that the doctor at Chabert Medical Center has told him that he needs a hip replacement but that unless he waits two or three years, the replacement will not last the rest of his lifetime. (Tr. 38). Plaintiff testified that he has had three hip x-rays in the past year. (Tr. 38). Plaintiff testified that Dr. Walker stated that the problems in his hip are making the problems in his lower back worse. (Tr. 38).

As to his bilateral carpal tunnel syndrome, plaintiff testified that it affects his sleep. (Tr. 39). He said that he wakes up at night with his hands stinging, and his thumb locks. (Tr. 39). Plaintiff testified that he only sleeps about two hours before he wakes up in pain, and then is awake for five to ten minutes, and this process goes on through the night. (Tr. 39). Plaintiff testified further that he sleeps during the day, taking a nap that lasts from an hour to an hour and a half, sometimes twice a day. (Tr. 39-40).

Robling testified that he can stand for an hour or so before he needs to sit down. (Tr. 40). He acknowledged that he could probably stand for another hour after he sat down, but that if he did that all day, he would "wear [himself] out." (Tr. 40). He testified that out of an eight-hour day, he could stand for six hours, but has not done so in a long time. (Tr. 40). He testified that he generally sits on the couch during the days and puts his leg on the coffee table to relax his hip. (Tr. 40). Robling explained that the problems with his hip are worse than his other problems. (Tr. 40-41). He testified that he stands a total of four hours during a twelve-hour day. (Tr. 41). Plaintiff said that his more severe problems with his hip started about a year ago. (Tr. 41).

When asked why he was not able to work in a sit-down job before his more severe hip problems started, Robling explained that he can only sit for an hour at a time before he has to get up to stretch and relax his neck for approximately five minutes. (Tr. 41-42). He testified that his neck bothers him if he sits too long without getting up and stretching. (Tr. 42). Robling said that when he was at [adult] education school at Bayou Cane he had to sit for two or three hours a day and he said that was too much for him. (Tr. 42). When asked what he did after those two or three hours, Robling said that he went home, lay down and took pain medicine. (Tr. 42).

C.    Vocational Expert Testimony

A vocational expert, Beth Drury, testified at the hearing. Drury clarified that Robling's past work was what he called a "sandblaster/painter," meaning he both sandblasted and painted in that job. (Tr. 43). The vocational expert stated that plaintiff's past relevant job as a painter or sandblaster/painter is classified as semiskilled, medium work and that his past relevant job as a shrimper is classified as semiskilled, heavy work. (Tr. 43). Drury stated that Robling would not have acquired skills that would transfer to sedentary work by doing these jobs. (Tr. 44).

The ALJ posed a hypothetical of an individual who is 50 years of age and is capable of light work within the meaning of the Dictionary of Occupational Titles. (Tr. 44). This hypothetical person was restricted to the following: (1) only occasional overhead work; (2) occasional postural activities; (3) no climbing of ladders or scaffolds; and (4) frequent handling and fingering. (Tr. 44). The vocational expert confirmed that these hypothetical restrictions excluded Robling's past work. (Tr. 44). She also confirmed that there was no other work available within the parameters of the hypothetical. (Tr. 44). The vocational expert testified that at this stage of the hypothetical, other work would include: a cashier, classified as light work with 943,320 positions in the United States; an usher, classified as light work with 85,961 positions in the United States; and a marker, classified as light work with 108, 382 positions in the United States. (Tr. 44-45).

The ALJ then modified the hypothetical to "reduce the exertional level to sedentary with occasional overhead, occasional posturals, [and] frequent handling and fingering." (Tr. 45). Drury clarified that these restrictions meant that the hypothetical claimant would not be able to perform a full range of sedentary work. (Tr. 45). Assuming that this hypothetical person had not yet reached 50 years old, the vocational expert testified that available positions would include (1) a sorter, classified as sedentary work with 12,326 positions in the United States and 165 Louisiana positions; (2) a cutter and paster, classified as sedentary work with 98,860 positions in the United States and 1,410 Louisiana positions; (3) a machine tender or operator, classified as sedentary work with 4,908 positions in the United States and 44 Louisiana positions. (Tr. 45-46).

The vocational expert confirmed that those positions were almost exhaustive of available jobs under the terms of the hypothetical. (Tr. 46). Plaintiff's counsel then asked whether those jobs would remain available if the hypothetical person would have to be "off task twenty (20) percent of the time due to fatigue and would need to lie down or otherwise," and the vocational expert confirmed that they would not be available. (Tr. 46). The vocational expert further testified that no other work would remain if that condition were added to the hypothetical. (Tr. 46).

D.    Medical Evidence

12

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 18-22). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

1.    The Commissioner applied the correct legal standard when assessing plaintiff's residual functional capacity and that finding is supported by substantial evidence.

Before deciding at step four of the sequential evaluation whether a claimant can return to his past relevant work, the ALJ must determine his residual functional capacity, which is the person's "ability to do physical and mental tasks on a sustained basis despite limitations from h[is] impairments. In determining the [residual functional capacity], the Commissioner must consider all of a claimant's impairments, including those that are not severe." Giles v. Astrue, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(e), 404.1545). Residual functional capacity "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence." Perez, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ is solely responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Taylor v. Astrue, 706 F.3d 600, 602–03 (5th Cir. 2012).

The ALJ found that Robling had the residual functional capacity to perform light work, with the following limitations: only occasionally engaging in postural maneuvers, but he should avoid climbing ladders/scaffolds; only occasionally reaching overhead, but he could frequently perform handling/fingering of objects. (Tr. 19–22). He found that plaintiff had the severe impairments of bilateral carpal tunnel syndrome, status-post anterior cervical disc fusion and right shoulder arthroscopy, and that plaintiff's subjective allegations were not consistent with the medical evidence in the record. (Tr. 18; 20). At step four, the ALJ determined that plaintiff was unable to perform his past relevant work as a sandblaster/painter and shrimper. (Tr. 22). At step five, however, the ALJ found that plaintiff could perform other available jobs that existed in significant numbers in the national economy. (Tr. 22–23).

In his first assignment of error, plaintiff argues that the ALJ's residual functional capacity determination is not supported by substantial evidence because the ALJ applied improper legal standards. Record Doc. No. 11-1 at p. 7. The crux of his argument is that the ALJ failed to rely on physical therapist Trevor Bardarson's functional capacity evaluation reports in his decision. Id. In support of his position, Robling cites Kneeland v.Berryhill, 850 F.3d 749 (5th Cir. 2017), for the proposition that it is legal error for an ALJ to either fail to consider or reject without explanation a physician's medical opinion in his decision. Id. at p. 8. Plaintiff argues that an "ALJ's decision cannot be supported

by substantial evidence when an ALJ rejects [the physician's opinion] without explanation." Id.

Defendant asserts that the ALJ did not have to consider Bardarson's functional capacity evaluation because Bardarson is not "an acceptable medical source for purposes of the Commissioner's regulations." Record Doc. No. 17 at p. 4. Bardarson is a physical therapist, not an orthopedic doctor, as in Kneeland. Id. Defendant avers that the ALJ's failure to explicitly discuss and reject Bardarson's functional capacity evaluation explicitly amounts to no more than harmless error. Id. In support of this position, the Commissioner cites Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1987), for the proposition that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Id.

"The Social Security Administration classifies medical sources into two categories, 'acceptable medical sources' and other medical sources." Matthews v. Colvin, 2016 WL 8710706, at *4 (N.D. Tex. Feb. 5, 2016) (citing 20 C.F.R. §§ 404.1513, 416.913). "Only acceptable medical sources can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight." Thibodeaux v. Astrue, 324 Fed. Appx. 440, 445 (5th Cir. 2009). "Acceptable medical sources include licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and

15

qualified speech pathologists." <u>Matthews</u>, 2016 WL 8710706, at *4 (citing <u>Thibodeaux</u>, 324 Fed. Appx. at 445). "'Other medical sources' can include nurse practitioners, physicians' assistants, chiropractors, audiologists, and <u>therapists</u>." <u>Matthews</u>, 2016 WL 8710706, at *4 (quoting Thibodeaux, 324 Fed. Appx. at 445) (emphasis added).

Bardarson, as a physical therapist, is not an "acceptable medical source." 20 C.F.R. § 404.1502(a). Instead, he is an "<u>other</u> medical source." As such, his opinion is not entitled to controlling weight and is not a medical opinion. Even if his opinion was entitled to the weight of an acceptable medical source, however, the results of his functional capacity evaluation are contradicted by the medical opinions of Robling's treating physicians, which constitute substantial evidence upon which the ALJ was entitled to rely.

Bardarson performed plaintiff's functional capacity evaluation on September 17, 2012. (Tr. 205-31). Bardarson estimated that plaintiff could perform work within the light to medium level, with specific restrictions, including: "occasional two hand lifting of up to 40 pounds to waist level and 30 pounds to shoulder level avoiding overhead lifting; frequent lifting of up to fifteen pounds; occasional carrying of up to forty pounds; avoid overhead work with the left arm and limit right hand overhead work to rare; avoid vertical ladders and limit step ladders to rare; and avoid repetitive cervical motions such as looking up at a crane operator." (Tr. 208). Bardarson also included estimations on

Robling's functional capacities in an eight-hour day (Tr. 210.) Specifically, his report estimated that plaintiff could 1) constantly sit with his back supported; 2) frequently stand, with frequent defined as 2.5-5.5 hours in an eight hour work day; 3) occasionally sit with his back unsupported, with occasionally defined as thirty minutes to 2.5 hours; and 4) occasionally stand trunk flexion, sit trunk flexion, walk, crouch and kneel. Id. Further, the chart estimates that Robling had can only occasionally walk, grasp objects, manipulate objects, and engage in repetitive hand motions with the left extremity. Id.

However, Bardarson's functional capacity examination is contradicted by several reports by plaintiff's treating physicians. On November 15, 2011, plaintiff underwent C5-6 and C6-7 anterior cervical discectomy[6] with spondylectomy[7] and foraminotomies,[8] interbody fusion and plate placement by Dr. McAllister, followed by shoulder repair in February 2012 by Dr. Neil Maki. (Tr. 340; 527-528). Dr. Maki's post-operative treating records indicated improvement of pain symptoms. (Tr. 398). Even though Bardarson's

---

[6] Discectomy (also called diskectomy) is excision of an intervertebral disk. Dorland's Illustrated Medical Dictionary 510, 526 (29th ed. 2000).

[7] Spondylectomy is removal of all parts of one or more vetebrae above the sacrum. Jung-Hoon Kim, et al., A Biomechanical Comparison of 360-degree Stabilizations for Corpectomy and Total Spondylectomy: a Cadaveric Study in the Thoracolumbar Spine, 10 JOURNAL OF ORTHOPAEDIC SURGERY AND RESEARCH (2015).

[8] Plural of foramintomy, the operation of removing the roof of intervertebral foramina, done for the relief of nerve root compression. Dorland's Illustrated Medical Dictionary 698 (29th ed. 2000).

report reflects his assessment that plaintiff cannot perform cervical repetitive motions, Dr. Maki observed "no atrophy, no muscle asymmetry," shoulder range of motion was passive and active to 150 degrees of forward flexion, otherwise essentially full range of motion and 5/5 strength testing.  (Tr. 398, 400).  The ALJ noted that "[a]s of August 2012 [a month before Bardarson's functional capacity evaluation], Dr. Maki was of the opinion that [plaintiff] was capable of performing light/medium duty work status and in January 2013 [five months after Bardarson's functional capacity evaluation] opined that [plaintiff] had reached maximum medical improvement with regard to his shoulder." (Tr. 20) (citing Tr. 398, 400).  When plaintiff was examined by Dr. McAllister in October 2012, a month after Bardarson's functional capacity evaluation, Dr. McAllister was of the opinion that Robling had the functional capacity to "do light duty" work. (Tr. 526).  He also opined that "his MRI shows no compressed nerve roots, and his EMG shows old compressed nerve roots and his [x-rays] show his spine in good alignment and the fusion intact." He wrote that ". . . what nerve damage he has is permanent." (Tr. 526).  Clinical impressions

included brachial stretch injury, left, cervical spondylosis[9] with radiculopathy,[10] and cervical herniated nucleus pulpous[11] with radiculitis.[12] (Tr. 526).

The ALJ stated that he reviewed the entire record and was unpersuaded by Robling's allegation "that the severity of functional limitations imposed by his impairments precludes the performance of all work activities." (Tr. 21). The ALJ afforded great weight to the medical opinions of plaintiff's treating physicians and was not required to give weight to Bardarson's functional capacity evaluation. The ALJ need not address each aspect of the record in detail. "[T]here will always be some evidence that is not specifically discussed in the Commissioner's decision. Our review is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record, and it is here. Likewise, the Commissioner used the proper legal standards to evaluate the evidence, and the ALJ adequately resolved inconsistencies in the record."

---

[9] Cervical spondylosis is a degenerative joint disease affecting the cervical vertebrae, intervertebral disks, and surrounding ligaments and connective tissue, sometimes with pain or paresthesia radiating down the arms as a result of pressure on the nerve roots. Dorland's Illustrated Medical Dictionary 1684 (29th ed. 2000).

[10] Cervical radiculopathy is disease of cervical nerve roots, often manifesting as neck or shoulder pain. Id. at 1511.

[11] Herniated nucleus pulpous is the herniation of an intervertebral disk in the neck. Id. at 1243.

[12] Radiculitis is inflammation of the root of a spinal nerve, especially of that portion of the root which lies between the spinal cord and the intervertebral canal. Id. at 1511.

Giles v. Astrue, 433 F. App'x 241, 251 (5th Cir. 2011).  Accordingly, plaintiff's first

assignment of error lacks  merit.

>   2.   The Commissioner properly and adequately considered whether plaintiff's
>        left shoulder degenerative joint disease and chronic pain syndrome were
>        severe impairments.

In his second assignment of error, plaintiff contends that the ALJ erred by failing

to consider whether his left shoulder degenerative joint disease and chronic pain

syndrome were severe impairments. Plaintiff's argument fails as a matter of law.

"Severe impairment has a specific–if somewhat surprising–meaning.  Under our

binding precedent, '[a]n impairment can be considered as not severe only if it is a slight

abnormality having such minimal effect on the individual that it would not be expected

to interfere with the individual's ability to work, irrespective of age, education or work

experience.'"  Loza v. Apfel, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added)

(quoting Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985)).  Re-stated, an

impairment is severe if it is anything more than a "slight abnormality" that "would not

be expected to interfere" with a claimant's ability to work. Id.  This second step requires

the claimant to make a de minimis showing. See Anthony v. Sullivan, 954 F.2d 289, 293

n.5 (5th Cir. 1992).

The ALJ at the second step of the evaluation determines the "medical severity" of

the claimant's medically determinable impairments.  20 C.F.R. § 404.1520(a)(4)(ii).

When the ALJ has proceeded beyond step two to find at a subsequent step that a claimant

is not disabled, plaintiff's argument that the ALJ failed at step two to find that a

particular impairment is severe

> is inapposite because the ALJ did not [deny] plaintiff's benefits based on
> a finding that [his] impairments are not severe.  See Chapparo v. Bowen,
> 815 F.2d 1008, 1011 (5th Cir. 1987) (argument regarding improper
> application of Stone standard irrelevant to disposition of case if outcome
> of case [did] not turn on issue of severity); see also Shipley v. Director of
> Health and Human Services, 812 F.2d 934, 935 (5th Cir. 1987).  The ALJ's
> report contains a statement of the Stone standard and a determination that
> as it applied to this case, [one of claimant's several alleged impairments]
> is a severe impairment. . . .  The ALJ then proceeded to the next step of the
> sequential evaluation and assessed whether an impairment or a combination
> of plaintiff's impairments met or exceeded the severity of the impairments
> listed in the appendix.  See 20 C.F.R. § 404.1594(f)(2).  In the absence of
> a "non-severe" finding as to any one of plaintiff's impairments and a
> decision to [deny] plaintiff's benefits based on a "non-severe" finding,
> plaintiff cannot complain that any prejudice resulted from the ALJ's
> performance at this stage in the evaluation.  See Brock v. Chater, 84 F.3d
> 726, 729 (5th Cir. 1996) (decision will not be reversed where claimant
> makes no showing that she was prejudiced by deficiencies she alleges).

Lawrence v. Barnhart, 2002 WL 356316, at *2 (E.D. La. Mar. 4, 2002); see also Taylor

v. Astrue, 706 F.3d 600, 603 (5th Cir. 2012) ("any error by the ALJ in not following the

procedures set out in Stone [at step two] is harmless" when the ALJ found at step five

that plaintiff was not disabled by his severe impairments); Bradshaw v. Astrue, 2008 WL

4387087, at *6 (N.D. Tex. Sept. 26, 2008) (citing Robinson v. Barnhart, 183 F. App'x

451, 455 (5th Cir. 2006); Reyes v. Sullivan, 915 F.2d 151, 154 n.1 (5th Cir. 1990);

Chapparo, 815 F.2d at 1011) ("In more recent cases, the Fifth Circuit has found no merit to claimants' arguments of ALJ error arising out of the failure to correctly apply or state the Stone standard where the sequential evaluation process proceeds past step 2."); accord Arnett v. Astrue, 676 F.3d 586, 591 (7th Cir. 2012) (citing Castile v. Astrue, 617 F.3d 923, 927-28 (7th Cir. 2010)); Delia v. Comm'r of Soc. Sec., 433 F. App'x 885, 887 (11th Cir. 2011) (citing Reeves v. Heckler, 734 F.2d 519, 524 (11th Cir. 1984)); Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 577 (6th Cir. 2009) (citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)).

"Because the ALJ did not summarily dispose of Plaintiff's claims at Step Two, but instead determined that Plaintiff had at least one severe impairment and proceeded to Step Four to determine that Plaintiff was not disabled, the proper focus here is whether substantial evidence supports the ALJ's residual functional capacity (RFC) assessment and ultimate determination that Plaintiff was not disabled." Lavery v. Astrue, 2012 WL 3276711, at *5 (S.D. Tex. Aug. 8, 2012) (citing Chaparro, 815 F.2d at 1011) (footnote omitted). As noted above, substantial evidence supports the ALJ's residual functional capacity assessment.

Having found that Robling had two severe impairments, the ALJ proceeded through subsequent steps of the evaluation, considered all of the evidence concerning plaintiff's medically determinable impairments and found at the fifth step that he was

22

capable of performing work at all exertional levels. The ALJ's failure to find at step two that Robling's other impairments were severe is irrelevant and non-prejudicial to him.

Additionally, plaintiff alleges that the ALJ erred in finding that plaintiff suffered a severe impairment of <u>right</u> shoulder arthroscopy when he in fact alleged <u>left</u> shoulder arthroscopy. However, as noted by defendant, this appears merely to be a typographical error, as the ALJ consistently noted that "[p]lainitff injured his <u>left</u> shoulder at work and underwent a <u>left</u> shoulder surgery, and made no other reference to any right shoulder problems." Record Doc. No. 17 at p. 7 (citing Tr. 20) (emphasis in original). Accordingly, plaintiff's second assignment of error is without merit.

    3.   <u>The Commissioner applied the proper legal standard to determine plaintiff's credibility regarding pain and other symptoms.</u>

Plaintiff's third and final assignment of error is that the ALJ failed properly to assess plaintiff's credibility regarding his pain and symptoms. Specifically, plaintiff claims that the ALJ committed reversible error by only mentioning the 2014 electromyography test,[13] and not the 2012 electromyography test, in his decision. Record Doc. No. 11-1 at p. 10. Plaintiff also argues that the Appeals Council failed to consider new evidence from Dr. Patrick Walker. Record Doc. No. 11-1 at p. 11.

---

[13] Electromyography is an electrodiagnostic technique for recording the extracellular activity (action potentials and evoked potentials) of skeletal muscles at rest, during voluntary contractions, and during electrical stimulation; performed using any of a variety of surface electrodes, needle electrodes, and devices for amplifying, transmitting, and recording the signals. <u>Id.</u> at 576-77.

As to his claim that the Appeals Council failed to consider new and material evidence, plaintiff states that "the Appeals Council received new and material evidence from Dr. Patrick Walker with specific medical restrictions based on impairments and limitations that existed during the alleged period of disability and relate to the period before the date of the ALJ hearing decision." Record Doc. No. 11-1 at p. 11 (citing Tr. 9-12). In discussing this evidence, the Appeals Council stated: "The Administrative Law Judge decided your case through December 31, 2016. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 31, 2016." (Tr. 2). Plaintiff states that in his report Dr. Walker checked the box that indicated that plaintiff's "impairments [have] lasted or can . . . be expected to last twelve months." Record Doc. No. 11-1 at p. 11 (citing Tr. 9).

In denying plaintiff's request for review, the Appeals Council stated that the new evidence "does not relate to the period at issue. . . . [and therefore] does not affect the decision about whether [plaintiff was] disabled beginning on or before December 31, 2016." (Tr. 2). Robling contends that the new medical evidence relates to the relevant time period and would likely change the outcome of the ALJ's decision if it was properly evaluated.  He asks the court to remand his case to the Commissioner for that purpose.

Based on my review of the record, I find that remand is not necessary for the following reasons.

First, it is well established that the Appeals Council is not required to discuss new evidence when it <u>denies</u> review, as opposed to reviewing the case and rendering a new decision affirming the ALJ's findings.

> When a claimant requests that the AC [Appeals Council] review an ALJ's decision, the AC "may deny a party's request for review <u>or</u> it may decide to review a case and make a decision."  20 C.F.R. § 404.981 (emphasis added). "When the Appeals Council makes a decision," . . . "it will follow the same rules for considering opinion evidence as [ALJs] follow."  20 C.F.R. § 404.1527; <u>see also</u> <u>Meyer v. Astrue</u>, 662 F.3d 700, 706 (4th Cir. 2011) ("Only if the Appeals Council <u>grants</u> a request for review and issues its own decision on the merits is the Appeals Council required to make findings of fact and explain its reasoning.").  The AC's decision then becomes binding unless the claimant seeks judicial review.  20 C.F.R. § 404.981.  On the other hand, when the AC denies the claimant's request for review, as it did in this case, that denial becomes part of the Commissioner's final decision, <u>Higginbotham [v. Barnhart</u>, 405 F.3d 332 (5th Cir. 2005)], 405 F.3d at 336-37, but the ALJ's decision remains binding, 20 C.F.R. § 404.981.

<u>Sun v. Colvin</u>, 793 F.3d 502, 511 (5th Cir. 2015).

> When confronted with new <u>and</u> material evidence, the Appeals Council "<u>shall evaluate</u> the entire record including the new and material evidence. . . . It will then <u>review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence</u> currently of record."  However, the regulations <u>do not require the Appeals Council to discuss the newly submitted evidence, nor is the Appeals Council required to give reasons for denying review</u>.

<u>Whitehead v. Colvin</u>, 820 F.3d 776, 780 (5th Cir. 2016) (quoting 20 C.F.R. § 404.970(b)) (citing <u>Sun</u>, 793 F.3d at 511) (emphasis added) (ellipses in original).  "Thus, it was not

error for the Appeals Council to omit a discussion of the additional treatment records submitted by" Robling when it denied review in the instant case.  Id.

Second,  Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005) ("Higginbotham I"), does not require this court to remand simply because the Appeals Council, in denying review, did not discuss the new evidence.  Higginbotham I did not hold that the Appeals Council had failed properly to consider and evaluate treating source opinions dated after the ALJ's decision.  Rather, the Fifth Circuit held that the district court had erred in failing to review the post-dated evidence that plaintiff had submitted to the Appeals Council, which the Appeals Council had "considered" when it denied plaintiff's request for review, but which the Appeals Council found provided no basis to reverse the ALJ's decision.  Id. at 334, 337.

The Fifth Circuit held in Higginbotham I that the court must examine the later-submitted evidence when plaintiff argues that the Appeals Council erred by denying her request for review despite the evidence.  "If additional evidence is presented while the case is pending review by the Appeals Council, courts of appeals customarily review the record as a whole, including the new evidence, in order to determine whether the Commissioner's findings are still supported by substantial evidence." Higginbotham v. Barnhart ("Higginbotham II"), 163 F. App'x 279, 282 (5th Cir. 2006) (citing Higginbotham I, 405 F.3d at 337-38) (additional citations omitted).  The "after-submitted evidence considered

by the Appeals Council constitutes part of the record upon which the final decision on eligibility is based, and . . . all record evidence, irrespective of its submission date, is subject to district court review" under the substantial evidence standard.  Beck v. Barnhart, 205 F. App'x 207, 214 (5th Cir. 2006) (citing Higginbotham I, 405 F.3d at 337) (emphasis added).

Following Higginbotham I and II, district courts in the Fifth Circuit have held that they should review the entire record, including the evidence submitted to the Appeals Council, to determine whether "the Appeals Council has failed to properly evaluate new medical evidence which is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination" and requires that the case "be remanded so that the Appeals Council fully can evaluate the treating source statement."  Booker v. Astrue, 2011 WL 4031096, at *7 (N.D. Tex. Aug. 15, 2011), report & recommendation adopted, 2011 WL 4048408 (N.D. Tex. Sep. 12, 2011) (citations omitted) (emphasis added); accord Ayala v. Berryhill, 2018 WL 1470626, at *4 (N.D. Tex. Mar. 8, 2018), report & recommendation adopted, 2018 WL 1457246 (N.D. Tex. Mar. 23, 2018); Tackett v. Colvin, No. 1:16-CV-181-MTP, 2017 WL 651957, at *9 (S.D. Miss. Feb. 16, 2017); Luna v. Colvin, 2016 WL 5475806, at *4 (E.D. Tex. Sept. 29, 2016); Thornton v. Colvin, 2016 WL 1136627, at *13 (E.D. La. Feb. 29, 2016), report & recommendation adopted, 2016 WL 1110231 (E.D. La. Mar. 22, 2016); see also Jones v. Astrue, 228 F. App'x 403, 407

27

(5th Cir. 2007) (The evidence submitted to the Appeals Council "did not so contradict earlier evidence that a 'weighing' of new and old evidence would be required." Remand was unnecessary when the new "report was . . . not inconsistent with" the evidence that the ALJ considered.) (emphasis added). In accordance with Higginbotham I and II, I have reviewed the new evidence and find that it does not significantly undermine the ALJ's findings, which are still supported by substantial evidence, because the new evidence is not material.

"The Appeals Council is permitted to consider additional evidence only if it is new, material, and related to the period on or before the ALJ's hearing decision." Martinez v. Astrue, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 20 C.F.R. §§ 404.970(b), 404.976(B)) (emphasis added). This court may not issue factual findings on new medical evidence and may review such evidence only to determine if remand to the Commissioner is appropriate. Id.

"Evidence that was 'not in existence at the time of the administrative . . . proceedings, meets the "new" requirement for remand . . . .'" Hunter v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008) (quoting Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir.1989)); accord Johnson v. Soc. Sec. Admin., 631 F. App'x 260, 262-63 (5th Cir. 2016) (citations omitted). However, "[e]vidence which is merely cumulative of that already in the administrative record is not 'new' evidence that would support a remand under §

28

405(g)."  Wilson v. Astrue, 2009 WL 2341803, at *4 (S.D. Tex. July 27, 2009) (citing

Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989); Bradley v. Bowen, 809 F.2d 1054,

1058 (5th Cir. 1987)) (emphasis added); accord Ferrari v. Astrue, 435 F. App'x 314,

314-15 (5th Cir. 2010); Haynes v. Astrue, 2012 WL 3860467, at *3 (E.D. La. July 23,

2012), report & recommendation adopted, 2012 WL 3863171 (E.D. La. Sept. 5, 2012),

aff'd, 519 F. App'x 258 (5th Cir. 2013).

New evidence must also be material to be the basis for a remand.  The "materiality

inquiry requires determining whether the evidence relates to the time period for which the

disability benefits were denied."  Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003)

(citing Ripley, 67 F.3d at 555); accord Joubert v. Astrue, 287 F. App'x 380, 383 (5th Cir.

2008).  The new evidence cannot merely concern a subsequently acquired disability or the

deterioration of a condition that was not previously disabling.  Id.; Garson v. Barnhart, 162

F. App'x 301, 303 (5th Cir. 2006) (citing Leggett v. Chater, 67 F.3d 558, 567 (5th

Cir. 1995)).

Further, "[f]or new evidence to be material, there must exist the reasonable

possibility that it would have changed the outcome of the Secretary's determination."

Hunter, 283 F. App'x at 262 (quotations omitted) (citing Latham v. Shalala, 36 F.3d 482,

483 (5th Cir. 1994)); accord Jones, 228 F. App'x at 406 (citing 28 U.S.C. § 405(g)).[14]

Robling has not shown that Dr. Walker's medical report post-dating the ALJ's

opinion is material, as defined by the Fifth Circuit. The relevant time period to establish

disability is from plaintiff's alleged onset date of January 28, 2016 through December 31,

2016. Dr. Walker's report is dated July 12, 2017, seven months after the date of last

insured. Even though Dr. Walker checked a single box on a form signifying that plaintiff's

symptoms had lasted or would last for twelve (12) months, (Tr. 9), appellate courts,

including the Fifth Circuit, have often held that checklist opinions are unworthy of

credence when they are not adequately supported by or are inconsistent with the medical

records. See DeJohnette v. Berryhill, 681 F. App'x 320, 321-22 (5th Cir. 2017) ("The

ALJ was well within its [sic] discretion to conclude that [a treating physician's] checking

a single box on a single form without any supporting medical evidence did not outweigh

the other substantial record evidence supporting a finding of no disability."); Foster v.

Astrue, 410 F. App'x 831, 833 (5th Cir. 2011) ("[T]he 'questionnaire' format typifies

---

[14]The revised regulations now provide a stricter standard for new evidence in that the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (2017) (emphasis added). Because "material" is defined by the Fifth Circuit to include a reasonable possibility of a changed outcome, it remains to be seen how the new regulations will affect that definition.

'brief or conclusory' testimony. . . .  [W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the treating physician's] opinion is given little weight.'"); Peck v. Barnhart, 214 F. App'x 730, 738 (10th Cir. 2006) (The ALJ provided legitimate reasons for rejecting a doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the doctor's treatment notes.); Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (quotation omitted) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [When] these so-called reports are unaccompanied by thorough written reports, their reliability is suspect . . . ."); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."). Dr. Walker's checklist form opinion is neither adequately supported by or consistent with the medical record as a whole, and in fact may reflect a condition that worsened after the relevant time period of January 26 - December 31,

31

201<u>6</u>, rather than plaintiff's symptoms complained of during the time period relevant in this matter.

In January 2017, plaintiff was examined by Dr. Walker, who found a full range of motion, no cervical lymphadenopathy,[15] normal motor strength in both upper and lower extremities and his sensory exam was intact. (Tr. 536). In February 2017, Dr. Walker saw Robling again, and reported that he was doing well without any significant complaints of chest pains, shortness of breath, palpitations or dizziness. (Tr. 540). The report notes that plaintiff complained of right elbow and lower back pain, but upon examination, he did not appear to be in acute distress. (Tr. 540) Dr. Walker reported that Robling demonstrated normal cervical spine range of motion and he was neurologically intact. (Tr. 540). However, Dr. Walker's new report dated July 12, 2017, shows that plaintiff's symptoms appear to have worsened. (Tr. 9-12).  If plaintiff wishes to seek disability benefits for this new period after the relevant December 31, 2016 end date, the proper method for relief is to reapply to the Social Security Administration, rather than to remand this decision.

Because the new medical report does not relate to the 2016 period for which benefits were denied, it is immaterial. <u>Hernandez v. Astrue</u>, 278 F. App'x 333, 338 (5th Cir. 2008)

---

[15] Lymphadenopathy is disease of the lymph nodes. <u>Dorland's Illustrated Medical Dictionary</u> 1034 (29th ed. 2000).

(citing 20 C.F.R. § 404.1502); <u>Sanchez v. Barnhart</u>, 75 F. App'x 268, 270 (5th Cir. 2003) (citing <u>Shave v. Apfel</u>, 238 F.3d 592, 597 (5th Cir. 2001)). Accordingly, there is no basis for remand. <u>See</u> <u>Martinez v. Astrue</u>, 252 F. App'x at 587(citing 20 C.F.R. §§ 404.970(b), 404.976(B)).

As to his claim that the ALJ failed properly to assess his credibility, plaintiff bears the burden of proving that he suffers from a disability under the first four parts of the sequential inquiry. <u>Perez</u>, 415 F.3d at 461. Determining the credibility of his subjective evidence of pain and disability is a necessary part of the ALJ's consideration of the evidence. <u>Luckey v. Astrue</u>, 458 F. App'x 322, 326 (5th Cir. 2011) (citing <u>Scott v. Heckler</u>, 770 F.2d 482, 485 (5th Cir. 1985)); <u>Perez</u>, 415 F.3d at 462.

Regarding the effect of 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p on an ALJ's credibility findings, the Fifth Circuit has held that the ALJ is bound to explain his reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in [her] articulation.'" <u>Hernandez v. Astrue</u>, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting <u>Falco v. Shalala</u>, 27 F.3d 160, 164 (5th Cir. 1994)). The ALJ has the responsibility to evaluate the credibility of witnesses, <u>Masterson v. Barnhart</u>, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" <u>Spruill v. Astrue</u>, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting <u>Falco</u>, 27 F.3d at 164). Thus, the ALJ's

33

credibility evaluation is entitled to <u>considerable deference</u> by this court.  <u>McKnight v. Astrue</u>, 340 F. App'x 176, 181 (5th Cir. 2009) (citing <u>Newton</u>, 209 F.3d at 459); <u>Bedford v. Astrue</u>, 236 F. App'x 957, 962 (5th Cir. 2007) (citing  <u>Newton</u>, 209 F.3d at 459).  The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required.  <u>Undheim v. Barnhart</u>, 214 F. App'x 448, 450-51 (5th Cir. 2007) (citing 20 C.F.R. § 404.1529(c); <u>Falco</u>, 27 F.3d at 164); <u>James J. Flanagan Stevedores, Inc. v. Gallagher</u>, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing <u>Falco</u>, 27 F.3d at 163); <u>Godbolt v. Apfel</u>, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999).

The ALJ is <u>not</u> required to discuss every piece of evidence, particularly "when dealing with such an extensive and multi-faceted record."  <u>Giles v. Astrue</u>, 433 F. App'x 241, 251 (5th Cir. 2011) (citing <u>Anderson v. Sullivan</u>, 887 F.2d 630, 634 (5th Cir. 1989); <u>Mays v. Bowen</u>, 837 F.2d 1362, 1364 (5th Cir. 1988)).  "The ALJ is <u>not</u> required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility."  <u>Clary v. Barnhart</u>, 214 F. App'x 479, 482 (5th Cir. 2007) (citing <u>Falco</u>, 27 F.3d at 163). The ALJ is required only to review the entire record, resolve conflicts in the evidence and state specific reasons for his credibility findings, supported by the evidence.  <u>Luckey</u>, 458 F. App'x at 324; <u>Giles</u>, 433 F. App'x at 249; <u>Newton</u>, 209 F.3d at 452.  The ALJ complied with these requirements in the instant case.

34

The ALJ in this case explained why he found that Robling's subjective symptoms and alleged limitations were not credible and not entirely consistent with the evidence as a whole.  As the ALJ stated, that evidence includes plaintiff's own reports that he "had no problems tending to his personal self-care needs independently. . . . [h]e could prepare meals, . . . perform household chores and yard work, shop, manage personal finances, and engage in social activities." (Tr. 21) (citing Tr. 31-43). The ALJ accurately noted that the medical evidence indicates that plaintiff's symptoms, while creating limitations on his ability to perform some work-related activities, do not preclude him from participating in all work activities. (Tr. 21, 398, 400, 434, 536).  The ALJ's findings are substantially supported by the record.

"The ALJ properly considered the record as a whole, including the available medical evidence and the nature and extent of the plaintiff's daily activities, in determining that the plaintiff's subjective complaints were not fully credible."  Hoelck v. Astrue, 261 F. App'x 683, 686 (5th Cir. 2008) (citing Hollis v. Bowen, 837 F.2d 1378, 1384-85 (5th Cir. 1988); Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995)).

For all the foregoing reasons, this assignment of error lacks merit.

<u>CONCLUSION</u>

The ALJ used the appropriate legal standards to weigh and resolve conflicts in the medical opinion evidence and to evaluate plaintiff's credibility. His residual functional

capacity findings and determination that Robling could perform less than a full range of light work, with certain restrictions, are supported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's appeal be denied and his complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[16]

---

[16] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

New Orleans, Louisiana, this ____30th____ day of April, 2019.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE